**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-06-136-M |
| | ) | |
| MICHAEL DEWAYNE MAYTUBBY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is defendant Michael Dewayne Maytubby's ("Maytubby") motion to suppress evidence obtained at the arrest on September 29, 2004, filed July 18, 2006. On July 27, 2006, the government filed its response. On September 6, 2006, the Court conducted a hearing on Maytubby's motion to suppress. At the hearing, Officer Robert Coniglione of the Oklahoma City Police Department testified.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.   Factual Background[2]

On September 29, 2004, Officer Coniglione and his partner, Officer Scott, were patrolling the area near NW 10th Street and Pennsylvania Avenue in Oklahoma City, Oklahoma. At approximately 7:10 p.m., the officers were driving westbound on NW 16th Street when they heard loud music coming from a stereo. As the officers passed a brown 1985 Oldsmobile Cutlass ("Cutlass"), they could tell the loud music was coming from the Cutlass. The officers continued down the block and turned around to pursue the Cutlass. At the hearing, Officer Coniglione testified

---

[1]The Court finds that Officer Coniglione is a credible witness.

[2]This factual background is based upon the evidence presented at the hearing.

that while they were turning around to pursue the Cutlass, they were more than fifty (50) feet away from the Cutlass and could still hear the loud music.

The officers ultimately conducted a traffic stop of the Cutlass. Officer Coniglione made contact with Maytubby,[3] the driver of the Cutlass, and asked for his license and proof of insurance. Maytubby provided the pertinent documents. While Officer Coniglione returned to the patrol vehicle to check Maytubby's license and to conduct a warrant check, Officer Scott remained at the Cutlass. Before the checks were completed, Officer Coniglione heard Officer Scott yell "Gun!"

Officers removed Maytubby from the Cutlass, put him on the ground, and handcuffed him. Officer Scott recovered a loaded firearm from under the driver's seat. Maytubby was arrested for carrying a loaded firearm. During a search incident to arrest, officers located two bags of marijuana on Maytubby's person, one in his left pocket and one in his right pocket. Additionally, officers located approximately $1,700 in cash, primarily in small bills, in various pockets of Maytubby's clothing.

II.     Discussion

Maytubby asserts that there was no probable cause to pull him over and that the stop was simply a "ruse" by law enforcement to detain him. Maytubby, therefore, asserts that the stop was illegal and that any evidence obtained as a result should be suppressed.

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic

---

[3]At the hearing, Officer Coniglione testified that he recognized Maytubby from previous contacts and recognized that Maytubby was wearing gang clothing.

stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted). Further, "[a]n officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop." *United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004).

Having heard the evidence presented, the Court finds that the initial traffic stop of the Cutlass was valid under the Fourth Amendment. Specifically, because Officer Coniglione determined that the music coming from the Cutlass was plainly audible from a distance of more than fifty (50) feet, the Court finds that Officer Coniglione was justified in stopping the Cutlass based upon the violation of Oklahoma City Ordinance § 34-4(5)(b).[4] Additionally, while the Court recognizes that it is

---

[4] Oklahoma City Ordinance § 34-4(5)(b) provides:
> The following acts, among others and not to exclude other such acts, are declared to be excessive or unusual noises in violation of this chapter . . . (5) *Radios, television equipment, electronic audio equipment, musical instruments and similar devices.* operating or permitting the use or operation of any device designed for sound

irrelevant whether Officer Coniglione may have had other subjective motives for stopping the Cutlass, the Court finds that the traffic stop was not a ruse by law enforcement to detain Maytubby.

III.     Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Maytubby's motion to suppress evidence obtained at the arrest on September 29, 2004 [docket no. 85].

**IT IS SO ORDERED this 25th day of September, 2006.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

production, amplification, or reproduction, including but not limited to any radio, musical instrument, phonograph, television set, tape recorder, loud speaker, or other similar device such as to produce a noise disturbance: . . . b. on public property or on a public right-of-way so as to be plainly audible 50 feet or more from such device, except as authorized by permit.