## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
| vs.     ) | Case No. CR-06-136-M |
|     ) | |
| MICHAEL DEWAYNE MAYTUBBY,     ) | |
| DEONNA SHONTAY BROOKS, et al.,     ) | |
|     ) | |
|     Defendants.     ) | |

## ORDER

Before the Court are defendant Michael Dewayne Maytubby's ("Maytubby") motion to suppress evidence discovered as a result of a search on October 17, 2004 and defendant Deonna Shontay Brooks' ("Brooks") Motion to Suppress Fruits of Search on October 17, 2004. The government has filed its responses.[1] On September 6, 2006, the Court conducted a hearing on the motions to suppress. At the hearing, Officer Mark McCaleb of the Oklahoma City Police Department testified.[2] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.    Factual Background[3]

Maytubby and Brooks resided at 2304 S.W. 46th Street in Oklahoma City, Oklahoma (the "Residence"). At approximately 12:45 a.m. on October 17, 2004, Officer McCaleb received a call

---

[1]In its response to Maytubby's motion, the government noted that it "puts defendant Maytubby to his burden of proving standing to contest the searches at issue." However, at the hearing, the parties stipulated that Maytubby resided at 2304 S.W. 46th Street in Oklahoma City, Oklahoma, and the government conceded that Maytubby does have standing to contest the search at issue.

[2]The Court finds that Officer McCaleb is a credible witness.

[3]This factual background is based upon the evidence presented at the hearing.

over his police radio that a subject was outside in the street in the 2300 block of SW 46th Street[4] firing numerous rounds from a weapon. Officer McCaleb was not far from the location of the call and immediately responded. When he was a short distance from the 2300 block of SW 46th Street, Officer McCaleb heard approximately fifteen gunshots.

Officer McCaleb then arrived at the 2300 block of SW 46th Street and parked his vehicle at the end of the street. He began to walk down the street and saw shell casings in the street in front of the Residence and a car with its windows shot out in the driveway of the Residence.[5] Officer McCaleb also saw that the glass storm door of the Residence had been shot out, and when he approached the door, glass was still falling from it. He further observed that the front door of the Residence was shut but had no holes in it, and Officer McCaleb testified that he, therefore, assumed the front door must have been open at the time of the shooting.

Officer McCaleb then knocked on the front door of the Residence to make sure there were no victims inside, to find witnesses, and generally to investigate what had happened. Maytubby opened the door, and Officer McCaleb asked what happened and if anyone inside was hurt. Maytubby said that he had been asleep and did not hear anything. While he was talking to Maytubby, Officer McCaleb saw a spent shell casing two feet inside the door. Upon seeing the spent shell casing, Officer McCaleb asked Maytubby to step outside, and Maytubby was taken to

---

[4]At the hearing, Officer McCaleb testified that he was aware of this area, and specifically was aware of the Residence, based upon prior complaints by neighbors of alleged gang, drug, and weapon related activity.

[5]At the hearing, Officer McCaleb testified that when he discovered the shell casings and shot out window, it had been approximately four to five minutes since he had heard the gunshots.

2

a police car.[6]

Officer McCaleb, along with another officer, then entered the Residence to conduct a protective sweep. During the sweep, Officer McCaleb saw a high capacity rifle magazine sticking out between mattresses in a bedroom and saw a set of digital scales with white residue on them in the closet of a bedroom. After the Residence was secure, the police obtained a search warrant.

II.   Discussion

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004) (internal quotations and citations omitted).[7]

> Absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant. The government bears the burden of establishing exigency. In our assessment of whether the burden is satisfied, we are guided by the realities of the situation presented by the record. We should evaluate the circumstances as they would have appeared to prudent, cautious and trained officers.

*Id.* (internal quotations and citations omitted). Further, the government's burden to prove the exigency exception "is especially heavy when the exception must justify the warrantless entry of a home." *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006).

In the case at bar, the government asserts that the officers' initial entry into the Residence was justified based upon exigent circumstances, specifically, the risk of personal danger and the fear of imminent destruction of evidence and/or flight of suspects.[8] The Tenth Circuit has established

---

[6]At the hearing, Officer McCaleb testified that Maytubby was taken to a police car within ten minutes of the original call.

[7]It is undisputed that the officers did not have a warrant when they initially entered the Residence.

[8]It is undisputed that the officers did not have consent to enter the Residence.

a two-part test to determine whether the risk of personal danger created exigent circumstances: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *Id.* at 718.   Additionally, the Tenth Circuit has established four requirements for a permissible warrantless entry when the police fear the imminent destruction of evidence:

> Such an entry must be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

*Carter*, 360 F.3d at 1241 (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that the government has met its burden of establishing the exigent circumstance of risk of personal danger.   Officer McCaleb was responding to a shootout in and around the Residence, and within minutes of hearing gunshots, he observed spent shell casings in the street in front of the Residence, a car with its windows shot out in the driveway of the Residence, and the Residence's front storm door shot out.   Additionally, after Maytubby opened the front door, Officer McCaleb saw a spent shell casing in plain view just inside the front door.   Based upon these observations, the Court finds that Officer McCaleb had an objectively reasonable basis to believe that there was an immediate need to protect the lives and safety of himself, the occupants of the Residence, and the occupants of the neighboring houses.   The Court further finds that it would be unreasonable to expect a prudent, cautious, and trained officer to walk away under the circumstances.   Finally, the Court finds that the manner and scope of the protective sweep conducted by the officers was reasonable.

Additionally, the Court finds that the government has met its burden of establishing the exigent circumstance of imminent destruction of evidence.  Specifically, the Court finds that based upon the facts set forth above, there was clear evidence of probable cause to believe a crime had occurred at the Residence.  The Court further finds that the type of crime Officer McCaleb was investigating – a shootout in a residential neighborhood – is a serious crime and that the destruction of evidence was likely.  The Court also finds that the protective sweep conducted by the officers was limited in scope to the minimum intrusion necessary.  Finally, the Court finds that the warrantless entry on October 17, 2004, was supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

III.   Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Maytubby's motion to suppress evidence discovered as a result of a search on October 17, 2004 [docket no. 85] and DENIES Brooks' Motion to Suppress Fruits of Search on October 17, 2004 [docket no. 78].

**IT IS SO ORDERED this 25th day of September, 2006.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE